**CITY OF GRAND PRAIRIE, Appellant,**

**v.**

**William TURNER et al., Appellees.**

**No. 18395.**

Court of Civil Appeals of Texas, Dallas.

Sept. 19, 1974.

Rehearing Denied Oct. 17, 1974.

H. P. Kucera, Jerry D. Brownlow, Dallas, John F. Bell, Jr., Grand Prairie, City Atty., for City of Grand Prairie.

Timothy J. Vineyard, Bill C. Hunter, Hunter, Greenfield, Whittington & Vineyard, Dallas, for appellees.

BATEMAN, Justice.

The appellees are landowners who brought this suit against the city of Grand Prairie attacking certain ordinances purporting to annex their property to the city of Grand Prairie. The court, sitting without a jury, rendered judgment for appellees: (1) declaring the annexation ordinances in question to be void; (2) enjoining Grand Prairie from levying or collecting taxes on appellees' property or exercising any governmental control over or enforcing restrictions upon the use of said property, and from proceeding to attempt to annex such property; (3) removing the cloud cast upon the title to appellees' property by the annexation ordinances in question; and (4) awarding appellees judgment for a total of $127.10 for taxes previously paid.

To make for a better understanding of the rather complicated situation presented by this appeal we have prepared the fol-

lowing sketch (not to scale) of the areas in question, which will be referred to by the ordinance numbers given them in appellant's annexation proceedings:

GRAND PRAIRIE
AREA OF ORIGINAL
INCORPORATION

ORDINANCE # 1419

N

1ST – Jan. 1952
2nd – May. 1961

ORDINANCE # 1417
1ST READING – JUNE 1951
2nd READING – MAY 1961

ARKANSAS LANE

ORDINANCE #923-1422
1ST MAY 1953
2nd MAY 1961

ABAINVILLE ROAD

ORDINANCE # 1039
1ST Nov. 1955
2nd May 1961

ORDINANCE # 1790
1ST READING – SEPT. 1966
2nd READING – NOV. 1966

ORDINANCE # 2050
1ST – July 1969
2nd – Aug. 1969

ORDINANCE # 1454
1ST DEC. 1961
2nd Aug. 1963

TARRANT CO.
DALLAS CO.

-2-

Ordinances 923 and 1422 relate to the same area, as appellant had a practice of giving an annexation ordinance one number on its first reading and another number on its second reading. To prevent unnecessary confusion, we shall refer to the ordinances by using only the number given to them on their second and final reading, except for the one last mentioned above which will be designated as 923–1422.

As originally enacted, Ordinance 923–1422 covered all the area in 1039, 1790, 2050, and 1454 as well as other land south of the city. The first reading of 923–1422 was in May 1953, which was after the first reading, but before the second reading, of 1417 and 1419. The latter two areas were the only part of Grand Prairie to which 923–1422 was contiguous. Vernon's Tex. Rev.Civ.Stat.Ann. art. 1175, § 2, authorizes Home Rule Cities to annex additional territory "lying adjacent" thereto. We held in City of Irving v. Callaway, 363 S.W.2d 832, 836 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.) that the first reading of an annexation ordinance is only the "initial step leading toward annexation and does not in itself effect annexation." Therefore, under *Callaway*, the attempted annexation of 923–1422 would have been invalid for lack of contiguity, except for the circumstances and events hereinafter described.

On May 15, 1961, occurred the second and final reading of the ordinances annexing 1039, 1417, 1419, and 923–1422. At that time 923–1422 included the areas shown in the above sketch as 1790 and 2050. On December 19, 1961 the city of Grand Prairie disannexed all of the area of 923–1422 except for the area labeled on the above sketch as 923–1422 and a ten-foot strip around the areas now known as 1790 and 2050. On the same date there was a first reading of Ordinance 1454 for the annexation of all the area that had been disannexed. The second reading of Ordinance 1454 was in August 1963. In December 1963 appellant again disannexed the interior portions of the areas now

known as 1790 and 2050, except for a one-hundred-foot strip around the perimeter thereof and a one-thousand-foot strip across the disannexed area which had previously been annexed under Ordinance 1454. Ordinances 1790 and 2050 annexed the areas as shown on the above sketch within the one-hundred-foot strip around the perimeter covered by Ordinance 1454. Ordinance 1790 had its first reading on September 27, 1966 and its second and final reading on November 1, 1966. Ordinance 2050 had its first reading on July 8, 1969 and its second and final reading on August 26, 1969.

Ordinance 2516 involved a different question. When Ordinance 1790 was adopted the City excluded all residences within that area from annexation, and after Ordinance 2050 was adopted the City annually passed an ordinance excluding from annexation the residences within it. This was done to give a tax exempt status to the residences within these areas. Ordinance 2516 brings all the residences within 1790 and 2050 into the city, so they are treated on the same basis as other residences in the city.

Appellees would uphold the judgment of the trial court on the ground that appellant had failed to comply with the Tex.Rev. Civ.Stat.Ann. art. 970a (1963), known as the Municipal Annexation Act. Section 7.-A. of that Act provides that a city may annex territory only within the confines of its extraterritorial jurisdiction. Section 3.-A. defines extraterritorial jurisdiction as "the unincorporated area, not a part of any other city, which is contiguous to the corporate limits of any city . . . ." Section 3.A.(3) further provides that a city of the size of appellant has extraterritorial jurisdiction consisting of all contiguous areas within two miles of the city limits. Section 7.D. provides that "All annexation proceedings by cities which are pending or instituted after March 15, 1963 shall be subject to the limitations as to size and extent of area imposed by this Act and shall be brought to completion within ninety

(90) days after the effective date of this Act or be null and void."

Appellees contend that appellant failed to comply with the Municipal Annexation Act in that: (1) the areas appellant attempted to annex were not contiguous or adjacent to its corporate limits or within its two-mile extraterritorial jurisdiction; (2) the areas were within the overlapping or exclusive extraterritorial jurisdiction of the city of Dallas; and (3) the areas consist of more land than allowed by statute; and (4) Ordinance 1454 was not brought to completion within ninety days after the effective date of the Act. (The Act became effective ninety days after adjournment of the Legislature on May 24, 1963, or on August 23, 1963.)

Appellant answers these contentions by saying, first, that the Municipal Annexation Act was substantially complied with, and second, that in any event any defects in the annexation proceedings were cured by a validating act, Tex.Rev.Civ.Stat.Ann. art. 974d–13 (Supp.1974), which provides in part:

> Sec. 3. The boundary lines of all such cities and towns, including both the boundary lines covered by the original incorporation proceedings and any subsequent extensions thereof are hereby in all things validated.

> Sec. 4. All governmental proceedings performed by the governing bodies of all such cities and towns and all officers thereof since their incorporation or attempted incorporation are hereby in all respects validiated as of the date of such proceedings.

■ We address ourselves first to the effect of the said validating act. Such an act has the effect of validating annexations of a city, even though such annexation proceedings were totally void *ab initio*, unless the annexation is contrary to the Constitution. City of Arlington v. City of Grand Prairie, 451 S.W.2d 284, 290 (Tex. Civ.App.—Fort Worth 1970, writ ref'd n.

r. e.). Such curative acts have been held to validate deficiencies complained of in the extension of the boundary lines and corporate limits of a city. Perkins v. State, 367 S.W.2d 140, 147 (Tex.1963); Jamison v. City of Pearland, 401 S.W.2d 322 (Tex.Civ.App.—Waco 1966, no writ). In Hunt v. Atkinson, 17 S.W.2d 780, 781 (Tex.Comm'n App.1929, jdgmt. adopted), after holding an annexation ordinance of the city of Houston to be void, the Commission of Appeals held that the enactment by the Legislature of a validating act, while the case was pending in the Supreme Court on motion for rehearing, removed the defects which formed the basis of the previous holding and that the annexation was valid.

■ All of the ordinances annexing the various tracts involved in this case were passed on final reading before March 13, 1969, the effective date of the validating act, except Ordinance 2050. The Legislature, having given the city of Grand Prairie the power to annex adjacent land within certain limitations and by following certain procedures, had the power to validate such attempted annexations even though they were accomplished without observing the statutory limitations and procedures. The central thrust of appellees' argument is that these annexation ordinances were not adopted in such sequence as to bring them within the requirements of the Municipal Annexation Act with respect to contiguity, the two-mile extraterritorial jurisdiction requirement, and the limitation of the size of annexed territory. They also attack Ordinance 1454 as not having been completed within the ninety days provided by Sec. 7.D. of the Municipal Annexation Act. This validating act is broad in its terms and should be liberally construed. Perkins v. State, 367 S.W.2d 140, 147 (Tex.1963). We so construe it as to meet all of the aforesaid specifically alleged failures of appellant to satisfy the requirements of the Municipal Annexation Act. Accordingly, we hold that the annexation of all the tracts in question, except

2050, were valid by virtue of the said curative statute.

■■ In our opinion, appellant substantially complied with the Municipal Annexation Act in enacting Ordinance 2050. Appellees contend that this ordinance was not within appellant's exclusive extraterritorial jurisdiction when it was enacted. This is based upon alleged lack of contiguity to appellant's corporate limits. The basis for this claim is that areas covered by Ordinances 1417, 1419, 923–1422, 1039, and 1790 were allegedly never validly annexed. However, 2050 is adjacent to both 1039 and 1790, as well as the one-hundred-foot strip around it annexed by 1454; and, not only were all of those separate annexations validated as hereinabove shown, but Ordinance 1039 has been judicially held to be valid in City of Arlington v. City of Grant Prairie, 451 S.W.2d 284 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.). Ordinances 1454 and 1790 were validated on March 13, 1969 when Tex.Rev.Civ.Stat. Ann. art. 974d–13 (Supp.1974) became effective. Being thus validated, both 1454 and 1790 were integral parts of the city of Grand Prairie before both the first and second reading of Ordinance 2050. Being contiguous to the areas covered by Ordinances 1790 and 1454, Ordinance 2050 was contiguous to the city limits of Grand Prairie and within its two-mile extraterritorial jurisdiction. The area cannot be considered within the extraterritorial jurisdiction of the city of Dallas, as it is not contiguous to the city limits of Dallas. Moreover, the city of Dallas adopted a resolution on February 25, 1974, disclaiming any right or claim to extraterritorial jurisdiction over the area covered by Ordinance 2050. In consideration thereof, the city of Grand Prairie on February 26, 1974, adopted a resolution disclaiming any right it may have had to annex certain other land. We construe these resolutions as a mutual agreement of the governing bodies of the cities pursuant to Sec. 3.B. of the Municipal Annexation Act.

■ Appellees next contend that the annexation of 2050 was in excess of the amount permitted to be annexed by the said Municipal Annexation Act. Section 7.B. of that Act provides that a city may annex in any one calendar year territory not exceeding ten percent of the total corporate area of the city as of the first day of that calendar year; and Section 7.C. provides that if a city fails in any calendar year or years to annex the total amount authorized in such calendar year or years such unused allocation may be carried over and used in subsequent calendar years, provided that not more than thirty percent of its total area may be annexed in any one year.

Since we have held that all the ordinances enacted before January 1, 1967, were validated by Tex.Rev.Civ.Stat.Ann. art. 974d–13 (Supp.1974), we find, in accordance with the stipulations of the parties that the area of Grand Prairie (including land annexed prior to such date) was the square miles indicated below:

| 1967 | 55.585 sq. miles |
| 1968 | 55.585 sq. miles |
| 1969 | 61.665 sq. miles |

It was also stipulated that within each of said years the city annexed the square miles shown below:

| 1967 | none |
| 1968 | 6.080 sq. miles |
| 1969 | 6.352 sq. miles |

Since no property was annexed in 1967, appellant may carry forward ten percent of the number of square miles in the city on January 1, 1967, or 5.5585 square miles. Even though in 1968 and 1969 the annexations ran slightly more than ten percent each year, these annexations are validated by utilizing the unused allocation of 1967. In 1968 the city could have lawfully annexed the 5.5585 square miles unused in 1967 and the same quantity allocated for 1968, or a total of 11.117 square miles. It annexed only 6.080 square miles in 1968, leaving 5.037 square miles of the 1967 allo-

cation still unused on January 1, 1969. This, added to the 6.1665 square miles permitted by the statute for 1969, makes 11.2035 square miles available for annexation in 1969. It was stipulated that annexation ordinances enacted in 1969, including Ordinance 2050, covered only 6.352 square miles. Therefore, 2050 is within the limitation as to size expressed in Sections 7.B. and 7.C. of the Municipal Annexation Act.

Appellant's first three points of error, contending that the ordinances of annexation were validated, are sustained for the reasons given above. Its fourth point of error, asserting that the annexation of 2050 was within its exclusive extraterritorial jurisdiction, and the seventh point, asserting that none of the ordinances annexed more land than permitted by the Municipal Annexation Act, are likewise sustained.

By its fifth point of error appellant complains of that part of the judgment which enjoins appellant from attempting by Ordinance 2516 to annex the residences which had previously been excluded by Ordinances 1790 and 2050. This point is sustained. In this state and nation the powers of government are divided into the legislative, executive and judicial departments, none of which is permitted by law to invade the domain of another. Tex.Const. art. II, § 1, Vernon's Ann.St. The enactment by a municipal corporation of an ordinance is a legislative function, "an expression of the will of the Legislature through the instrumentality" of the city council, upon which the Legislature has seen fit to confer a part of the governmental power reposed in it. "The rule is that the enactment of a void ordinance will not be enjoined, although its invalidity clearly appears, unless it also clearly appears that the mere enactment of the ordinance of itself will work irreparable injury without the intervention of some wrongful act under its authority." City of Dallas v. Couchman, 249 S.W. 234, 239 (Tex.Civ. App.—Dallas 1923, writ ref'd); City of

Arlington v. City of Grand Prairie, 451 S. W.2d 284, 293 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.). No such irreparable injury from the mere enactment of this proposed ordinance has been shown. We hold that the court erred in granting this injunction.

What we have said above makes it unnecessary for us to pass upon appellant's remaining points of error. The judgment appealed from is reversed and here rendered that the appellees take nothing by their suit.

Reversed and rendered.